# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

NEW PRIME, INC.,

        Plaintiff,

v.

MCGRIFF INSURANCE SERVICES, INC.,
as successor in interest to REGIONS
INSURANCE, INC.,

and

AMWINS BROKERAGE OF THE
MIDWEST, LLC,

        Defendants.

Case No. 6:22-cv-03037-S-MDH

## MOTION TO EXCLUDE EXPERT REPORTS, TESTIMONY AND OPINIONS OF PLAINTIFF'S EXPERT GARY GREENFIELD

COMES NOW Defendants, AmWins Brokerage of the Midwest, LLC (hereafter "AmWins") and McGriff Insurance Services, Inc., as successor in interest to Regions Insurance, Inc., (hereafter "Regions") by and through undersigned counsel, and for their Joint Motion to Exclude the Reports, Testimony and Opinions of Plaintiff's Expert Gary Greenfield, and Memorandum in Support thereof, state:

# TABLE OF CONTENTS

Table of Contents ................................................................................................................ i

Table of Authorities................................................................................................................ ii

    I.      Introduction …………………………………………………………………….1

    II.    Standard for Exclusion of Expert Testimony……………………………………1

    III.   Law and Argument…………………………………………………………...3

        A. Mr. Greenfields' Testimony and Opinions That It Was Reasonable to Hire Gibson, Dunn & Crutcher Should be Excluded Because It Will Not Assist the Jury……………………………………………………………………….3

        B. Mr. Greenfield Does Not Possess the Requisite "Scientific, Technical, or Other Specialized Knowledge" with Which to Offer Expert Testimony Regarding the Reasonableness of the Attorneys' Fees………………………………………...4

        C. Mr. Greenfield's Testimony Does Not Meet the Necessary Reliability Elements for Evaluating the Reasonableness of the Fees and Should be Excluded………8

**TABLE OF AUTHORITIES**

**Cases:**                                                                          **Page(s):**

Am. Auto. Ins. Co. v. Omega Flex, Inc., 2013 WL 2628658 (E.D.Mo. June 11, 2013)            8

Anderson v. Raymond Corp., 340 F.3d 520, 523 (8th Cir. 2003)                               2

In re: Barnes, 266 B.R. 387 (B.A.P 8th Cir.2001)                                          5,7

Bryant v. Bryan Cave, LLP, 400 S.W.3d 325, 334-35 (Mo. App. 2013)                          3

Combs v. Cordish Companies, Inc., 2015 WL 3715352, *3 (W.D. Mo. 2015).                     3

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)                         1,2

Guzman v. Hanson, 988 S.W.2d 550, 554-55 (Mo. App. 1999)                                   3

Hill v. Gonzalez, 454 F.2d 1201, 1203 (8th Cir. 1972).                                     3

Hirchak v. W.W. Grainger, Inc., 980 F.3d 605, 608 (8th Cir. 2020)                          8

J. B. Hunt Transport, Inc. v. General Motors Corp., 243 F.3d 441, 444 (8th Cir. 2001)      8

Kennedy v. Baxter Healthcare Corp., 348 F.3d 1073, 1074-75 (8th Cir. 2003)                 5

Kuhmo Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999).                                   2

Khoury v. Phillips Medical Systems, 614 F.3d 888, 892 (8th Cir. 2010)                     5,7

Lauzon v. Senco Products, Inc., 270 F.3d 681, 686–87 (8th Cir. 2001)                       2

Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757 (8th Cir.2006)                         5

Nelson v. Tennessee Gas Pipeline Co., 243 F.3d 244, 251 (6th Cir. 2001).                   3

Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 715-16     5
(8th Cir. 2001)

**RULES**

ABA Model Rules                                                                            4
Fed.R.Evid. 702                                                                       1,2,5,8

## INTRODUCTION

Plaintiff New Prime, Inc. ("Prime") claims it incurred attorneys' fees in the amount of $9.8 million defending a double fatality accident in New Mexico that occurred in late 2015 (the "Herrera Suit"). Prime brought this action against its insurance brokers, AmWins and McGriff Insurance Services as successor in interest to Regions Insurance, Inc. ("Regions"), claiming that they failed to advise Prime about particular insurance policy issues and Prime's insurance needs. Prime has alleged that Regions and AmWins failed to advise it that it could be exposed to the unreimbursed attorneys fee if Prime spent more than $5,000,000 defending a single action.

Prime hired Gary Greenfield, of Litigation Cost Management (LCM), to justify the reasonableness of these fees along with the reasonableness of hiring Gibson, Dunn & Crutcher LLP to defend the Herrera Suit. As further discussed below, Mr. Greenfield's opinions, report, and testimony should be excluded as he (1) does not have the experience necessary to opine on these matters, (2) does not have a reliable scientific method, and (3) cannot assist the jury by offering testimony that is well within their ability to understand. Mr. Greenfield represents that he has a methodology however it is apparent that it is hollow and carries no credence. Instead, Mr. Greenfield merely draws conclusions and speculates what he thinks or believes to be reasonable. Mr. Greenfield's testimony and report do not pass the standard described in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), as he did not offer any specialized knowledge or utilize reliable scientific data.

## STANDARD FOR EXCLUSION OF EXPERT TESTIMONY

Under Rule 702 of the Federal Rules of Evidence, "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or

1

education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED.R.EVID. 702. The question of whether Mr. Greenfield's opinions are admissible under FED.R.EVID. 702 is controlled by Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kuhmo Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999).

Under Daubert, U.S. District Courts must act as gatekeepers to "insure that proffered expert testimony is both relevant and reliable." Anderson v. Raymond Corp., 340 F.3d 520, 523 (8th Cir. 2003). Potentially pertinent factors to be considered in the court's gatekeeping function include whether the expert's theory or technique, (1) can be (and has been) tested; (2) has been subjected to peer review and publication; (3) has a known or potential "rate of error" and "standards controlling the technique's operation," and (4) enjoys "general acceptance" within a "relevant scientific community." Daubert, 509 U.S. at 592–94.

Additional factors developed in the cases following Daubert include "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." Lauzon v. Senco Products, Inc., 270 F.3d 681, 686–87 (8th Cir. 2001)(internal citations omitted).

In Kuhmo Tire, the Supreme Court held that the gatekeeping obligation under Daubert, which requires inquiry into the relevance and reliability of expert testimony, applies not only to "scientific" testimony, but to all expert testimony. Kuhmo, 526 U.S. at 137. The objective of such a requirement is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that

2

characterizes the practice of an expert in the relevant field." Id. at 152. The proponent of the

expert testimony must establish its admissibility by a preponderance of the evidence. Nelson v.

Tennessee Gas Pipeline Co., 243 F.3d 244, 251 (6th Cir. 2001).

**LAW AND ARGUMENT**

**I.      Mr. Greenfields' Testimony and Opinions That It Was Reasonable to Hire Gibson, Dunn & Crutcher Should be Excluded Because It Will Not Assist the Jury.**

"Opinions about the ultimate issue are not excludable simply because they related to the

ultimate issue in the case... but they can be excludable for other reasons—including the fact that

that they are not helpful to the jury." Combs v. Cordish Companies, Inc., 2015 WL 3715352, *3

(W.D. Mo. 2015).

> An expert's opinion about the ultimate issue is appropriate when the ultimate issue is one for which the jury requires an expert's assistance in the first place—like for instance, when the ultimate issue turns on the cause of a person's death. On the other hand, courts must guard against invading the province of the jury on a question which the jury is entirely capable of answering without the benefit of expert opinion. Id. (internal quotations omitted.)

In Combs, the Court excluded an expert's opinion that defendants had discriminatory

intent because a jury is "entirely capable of reviewing the evidence and forming its own

conclusions about the facts." Id.  Additionally, "expert testimony is not necessary where the

nature of the alleged negligent conduct is such that inferences to be drawn from the facts are

within the range of common experience of men and the juries are equally as capable of drawing

inferences as experts." Hill v. Gonzalez, 454 F.2d 1201, 1203 (8th Cir. 1972). See Bryant v.

Bryan Cave, LLP, 400 S.W.3d 325, 334-35 (Mo. App. 2013) (expert's testimony properly

excluded where it applied nothing more than common knowledge of the human condition and

would not have assisted jury); Guzman v. Hanson, 988 S.W.2d 550, 554-55 (Mo. App. 1999)

3

(trial court erred in admitting opinion testimony concerning ultimate issue in case, i.e., that he drove his truck safely, because even if he qualified as expert, expert testimony on fault would be of no assistance to jury and invaded province of jury). If a witness utilizes and applies scientific, technical, or other specialized knowledge, the testimony is that of an expert. Id. However, if the witness testifies without applying such knowledge, he or she is merely drawing an inference which the jurors are just as capable of drawing and such testimony is not admissible. Id.

Specifically, in this case, the jury is capable of determining whether it was reasonable for Prime to hire Gibson Dunn. Made evident by Mr. Greenfield's testimony, he has no more knowledge and experience than the average juror. Mr. Greenfield's opinions should be excluded because it will not assist the jury. Mr. Greenfield's testimony is mere generalities, echoing conversations he had with Prime's counsel, that offer no specialized knowledge considering he has no experience and did no analysis necessary to opine in this case.  The jury will hear from Prime why it hired Gibson Dunn.  The jury does not need an expert to explain to the jury that he thinks that Prime made a good decision.

> **II.     Mr. Greenfield Does Not Possess the Requisite "Scientific, Technical, or Other Specialized Knowledge" with Which to Offer Expert Testimony Regarding the Reasonableness of the Attorneys' Fees.**

In his report and deposition, Mr. Greenfield opines that the fees incurred by Prime for Gibson Dunn's defense work in the Herrera Suit were reasonable. Mr. Greenfield cited eight factors for evaluating this question. Notably, he analyzed the issue by using eight factors that he selected rather than the factors promulgated by the ABA Model Rules. (Exhibit A, Gary Greenfield's Expert Report, p. 5-6).

In construing FRE 702, Courts "require the proponent of expert testimony to prove, among other things, that the expert is qualified, and his opinion is reliable." Khoury v. Phillips Medical Systems, 614 F.3d 888, 892 (8th Cir. 2010); *see also* Kennedy v. Baxter Healthcare Corp., 348 F.3d 1073, 1074-75 (8th Cir. 2003) (affirming the district court's exclusion of an expert, who was not a physician or toxicologist, from opining as to "what makes a rubber glove safe or unsafe for allergy purposes or what level of proteins or allergens are necessary to achieve a safe level for allergy purposes"); Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 715-16 (8th Cir. 2001) (holding a district court abused its discretion in permitting a hydrologist to testify about safe warehousing practices, an area outside of his expertise). Additionally, when considering expert testimony, a district court must ensure that "all scientific testimony is both reliable and relevant." Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757 (8th Cir. 2006). Additionally, an expert is only permitted to offer testimony within the bounds of his qualifications, not opinions "outside of his area of expertise." See. E.g., Khoury v. Philips Med. Sys., 614 F.3d 88 (8th Cir. 2010).

Consider, In re: Barnes, 266 B.R. 387 (B.A.P 8th Cir.2001), plaintiff simply relied on the fact that their expert was a law enforcement official and that in his experience, prosecutors attempt to use a specific dissipation rate. Id at 404. The Court indicated that the record is barren of any evidence indicating that the officer had any specialized training or experience related to the rate. Further, the Court concluded plaintiff did not meet the burden of proof to establish the foundation that the officer had the requisite knowledge, skill experience training or education to assist. Id. See Am. Auto. Ins. Co. v. Omega Flex, Inc., 2013 WL 2628658 (E.D.Mo. June 11, 2013) (holding that a metallurgist expert cannot give opinions about defective design and warning because it is outside the scope of his expertise).

5

Our instant case is not unlike those mentioned above. In Mr. Greenfield's report, he details that he previously was a partner at Shartsis, Friese & Ginsburg, where he was a litigator for fifteen years. During his tenure, he  handled general commercial litigation including breach of contract, constitutional law, securities, fraud, bankruptcy litigation, intellectual property, unfair competition, and civil rights litigation. (Exhibit A, Gary Greenfield's Expert Report, p. 3).

The Herrera Suit arose from a collision between a truck owned by Prime and an automobile. The passengers of the automobile were killed on impact. Mr. Greenfield testified that he had little personal injury experience and could not recall any trucking industry defense experience.  He testified:

> Q.     Okay. **Did you ever do personal injury law?**
> A.     A little bit. **Not much.** (Exhibit B, Deposition of Gary Greenfield, p. 5:24-6:1)
>
>                 * * *
>
> Q.     Was 45 years ago. When is the last time you think that you practiced personal injury law?
> A.     **I didn't do much personal injury law**. As I said, **I was primarily a commercial litigator.**
> Q.     Do you think it was roughly 45 years ago since you did your personal injury lawsuit?
> A.     I left – I left my law firm in 1999. So it would have been before that.
> Q.     Okay. Okay. So at least 32 years ago. Fair?
>
> A.      **If that's what it subtracts to.** (Exhibit B, Deposition of Gary Greenfield, p. 6:22-7:8)
>
>                 * * *
>
> Q.     Did you utilize any of that personal injury law experience in coming to your opinions today?
>
> A.     Well, I'm not sure that I would say that I used that specific personal injury – those cases in coming to my opinion today.
> Q.     Okay. And none of those cases – fair to say, as you sit here today, none of those cases that you recall involved trucking, correct?
> A.     **Not that I recall. Not that I recall.**
> Q.     Okay. What – and none of those cases as you sit here today, involved a wrongful death. Is that fair?

<blockquote>

A.  **I don't recall.** (Exhibit B, Deposition of Gary Greenfield, p. 7:14-8:2).

\* \* \*

Q.  How many lawsuits have you reviewed that involve personal injury defense?

A.  You mean, as a – as a—in terms of my fee analysis?

Q.  Yes.

A.  I'm not sure. **Probably less than ten**.

Q.  Less than ten currently or less than ten in your career?

A.  Oh, overall. Not currently. (Exhibit B, Deposition of Gary Greenfield, p. 12: 17-25).

\* \* \*

Q.  **Have you ever been asked to look at a trucking accident case?**

A.  **I do not believe so**, other than this, of course. (Exhibit B, Deposition of Gary Greenfield, p. 14:12-15).

</blockquote>

Notwithstanding his admitted lack of expertise in complex trucking litigation, Mr. Greenfield formulated an opinion on the complexity of the factual and legal issues in the Herrera Suit and somehow concluded that the attorneys' fees were reasonable. He came to this conclusion despite never being retained to defend a trucking company or being retained to review bills of a law firm defending a trucking accident. (Exhibit B, Deposition of Gary Greenfield, p. 44:18-20). The entire basis for his opinions is founded on conversations he had with the two individuals responsible for billing and paying the fees, Christopher Dusseault, Prime's lawyer with Gibson Dunn, and Eric Nau, Prime's in-house lawyer, or the materials provided to him. He did no independent research, nor did he apply any experience with trucking defense or trucking defense fees to form his opinion. Moreover, like in <u>Barnes</u>, <u>Khoury</u> and <u>Am. Auto. Ins. Co</u>., Mr. Greenfield is offering testimony outside his expertise and bounds of specialized knowledge. Plaintiff cannot rely on the mere fact that Mr. Greenfield has an auditing business to justify him as an expert when he has no experience in trucking cases and is basing his opinions largely on conversations he has

7

had with Plaintiff's counsel. Based on the foregoing, Mr. Greenfield is not qualified nor that his opinions are at all reliable, and therefore his testimony, opinions and reports should be excluded

**III.    Mr. Greenfield's Testimony Does Not Meet the Necessary Reliability Elements for Evaluating the Reasonableness of the Fees and Should be Excluded.**

Under Federal Rule of Evidence 702, testimony in the form of an expert opinion must be "based on sufficient facts" and "help the trier of fact" by applying the expert's "specialized knowledge" and "reliable principles and methods." Hirchak v. W.W. Grainger, Inc., 980 F.3d 605, 608 (8th Cir. 2020). Subjective or speculative expert testimony "is not competent proof and contributes nothing to a legally sufficient evidentiary basis" and is not admissible. J. B. Hunt Transport, Inc. v. General Motors Corp., 243 F.3d 441, 444 (8th Cir. 2001).

Mr. Greenfield considered eight factors in forming his opinions. While there may be problems with his analysis under several of them, addressed herein are: (1) the amount at risk in the underlying action; and (2) the complexity of the factual and legal issues. (Exhibit A, Gary Greenfield's Expert Report, p. 5). In looking at these factors as samples, it becomes clear that Mr. Greenfield's testimony and reports are not admissible due to his opinion being based on insufficient data and unreliable methodology or technique.

**A.    The Amount at Risk in the Underlying Action.**

The first factor he considered was the amount at risk to Prime in the Herrera Suit. In his report, Mr. Greenfield, specifically refers to two large verdicts, one in 2015 and the other in 2013. In 2015, in a judicial district neighboring the Herrera Suit, a jury returned a verdict of $165 million against FedEx for an accident involving a rear-end collision between a truck and a car resulting in two deaths. In 2013, in the same neighboring judicial district, a jury returned a $58.5 million verdict in 2013 against a trucking company, including $47 million in punitive damages. (Exhibit

A, Gary Greenfield's Expert Report, p. 6). However, he testified he knew very little about these

cases and their verdicts. Consider his testimony:

> Q. And, sir, it's true to say that attorneys' fees were not included in those large verdicts. True?
> A. I don't know.
> Q. You don't know?
> A. No.
> Q. Do you know anything about those cases?
> A. Not other than what's in my report. (Exhibit B, Deposition of Gary Greenfield, p. 39:9-16)
>
> &#42; &#42; &#42;
>
> Q. All right. Now do you know whether or not – what the allegations were specifically against FedEx in the $165 million case?
> A. I don't recall. I may have been told at one point what – a little bit more about what—what was going on in those cases. But I don't recall at the moment.
> Q. Where did you get this information?
> A. I would have gotten it probably from either Mr. Nau, Mr. Dusseault or the materials I reviewed in the case.
> Q. Well, you reviewed a lot of materials in the case. I'm asking you specifically, sir. **Did you research these two lawsuits independently**?
> A. What—what do you mean, "research"? You mean did I look up the opinions or something? **No**. (Exhibit B, Deposition of Gary Greenfield, p. 41:11-20).

As evidenced by Mr. Greenfield's testimony, he did not apply any sort of specialized

knowledge; he simply considered that there had been some large verdicts. He could not know, nor

did he consider, whether either of those verdicts bore any resemblance to the Herrera Suit beyond

them both being reached in New Mexico. He simply accepted the materials, which included a

surface level summary regarding two generic multi-million-dollar verdict automobile cases,

provided to him and did no further analysis. Mr. Greenfield further admitted:

- He did not interview the lawyers involved in the 2015 and 2013 cases; (Exhibit B, Deposition of Gary Greenfield, p. 41:21-25)
- He did not investigate how much was charged in the defense of those cases; (Exhibit B, Deposition of Gary Greenfield, p. 42:1-3)

9

- He did not investigate what their hourly rate was; (Exhibit B, Deposition of Gary Greenfield, p. 42:4-8)
- He did not research into other trucking cases involving multimillion-dollar verdicts or settlements; (Exhibit B, Deposition of Gary Greenfield, p. 42:15-20).
- He did not do any research to determine the proportionality between the amounts of the verdict or settlement versus the defense cost. (Exhibit B, Deposition of Gary Greenfield, p. 42:21-43:1)

As clear from the above, Mr. Greenfield's opinions are based on generalizations that multi-million-dollar verdict cases are bad. Mr. Greenfield did not address the complexity or uniqueness of each individual matter when opining that the risk and fees were comparable or reasonable for the Herrera Suit. Additionally, as stated above, Mr. Greenfield does not have any experience nor qualifications to testify regarding the details nor the individual factual circumstances regarding a trucking case nor does he have the qualifications to opine on the reasonableness of the fees for defending a trucking accident. This alone should render his opinions inadmissible as he has not "helped the trier of fact" by offering any "specialized knowledge", nor has he utilized a reliable method when preparing his opinions.

### B. The Complexity of the Factual and Legal Issues.

Mr. Greenfield opined that one of the difficult issues in this matter was that Prime's driver suffered from sleep apnea and that it was a contributing factor in the complexity of the case. However, he did not provide a basis for how and why sleep apnea would lead to the amount of the fees incurred in the Herrera Suit. Consider his testimony:

> Q. All right. And—and it's fair to say – I think I know the answer to this question, but I want to make sure that I ask it. As a practicing lawyer or as an auditor, have you ever worked on a commercial vehicle accident?
> A. **Other than this case, not that I can recall.**
> Q. All right. Do you have any familiarity with the Federal Motor Carrier Safety Act?
> A. Other than a little bit that I've read in conjunction with some material in this case no.

Q. Do you know what training, if any, is provided to commercial drivers regarding sleep apnea?

A. I know that there are – there appear to be some rules and regulations and training involvement. Other than that, I don't know the specifics of it.

Q. Do you know what sort of medical requirements exist to address sleep apnea in commercial drivers?

A. **Not other than what I've seen in the reports in this case**. (Exhibit B, Deposition of Gary Greenfield, p. 62:7-63:5).

* * *

Q. [A]s you sit here today, what knowledge do you have with respect to sleep apnea?

A. You mean outside of the legal world? I mean, I have little bit of understanding that it's a—it's a sleep condition that people use devices for and sometimes drugs. Other than that, **I don't have any substantive knowledge about sleep apnea.**

Q. [I]n looking at determining sleep apnea being a complex issue, did you research how common sleep apnea is in commercial drivers?

A. Not other than the context of this case where it appears to be something that was common enough so that there are regulations and rules about it. (Exhibit B, Deposition of Gary Greenfield, p. 64:12-65:2).

He admitted that he does not know nor has he researched how many accidents throughout the United States were caused by sleep apnea, how many personal injury lawsuits involve a commercial vehicle having allegations of sleep apnea, how common allegations of sleep apnea is in truck accident lawsuits, or what experience Gibson Dunn had in defending against trucking cases involving sleep apnea allegations before taking the underlying matter. (Exhibit B, Deposition of Gary Greenfield, p. 65:3-66:4). Without any understanding of the very issue that Mr. Greenfield said was a complex legal or factual issue, he concludes that his consideration of this factor led to his conclusion that Gibson Dunn's fees were reasonable. This certainly does not meet the standard requiring him to base his opinion on his "specialized knowledge" and "reliable principles and methods" and therefore Mr. Greenfield's testimony and opinions should therefore be excluded and stricken.

11

WHEREFORE, Defendants AmWins Brokerage of the Midwest, LLC and McGriff Insurance Services, Inc., as successor in interest to Regions Insurance, Inc., and respectfully request that this Court Strike the testimony, opinions, and expert designation of Plaintiff's expert Gary Greenfield for the reasons stated above, and for any further and other relief this Court deems just and proper.

HEPLERBROOM LLC

By: */s/ Meg L. Fowler*
Meg L. Fowler No. 53776
Emily D. Roman No. 69307
701 Market Street, Suite 1400
St. Louis, MO 63101
314-241-6160
314-241-6116 Fax
MLF@heplerbroom.com
ER1@heplerbroom.com
*Attorney for AmWINS Brokerage of the Midwest, LLC*

And

KUTAK ROCK LLP

Eric. S. Johnson
Larry D. Fields
Taylor J. White
2300 Main Street, Suite 800
Kansas City, MO 64108
816-960-0090
*eric.johnson@kutakrock.com*
*larry.fields@kutakrock.com*
*taylor.white@kutakrock.com*
*Attorneys for McGill Insurance Services, Inc.*

12

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 10, 2023, the foregoing was filed electronically with the Clerk of Court, therefore to be served electronically by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Meg L. Fowler*