**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| NEW PRIME, INC., | |
| Plaintiff, | |
| v. | |
| MCGRIFF INSURANCE SERVICES, INC., as successor in interest to REGIONS INSURANCE, INC., | Case No. 6:22-cv-03037 |
| and | |
| AMWINS BROKERAGE OF THE MIDWEST, LLC, | |
| Defendants. | |

**PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE THE EXPERT REPORT, TESTIMONY
AND OPINIONS OF PLAINTIFF'S EXPERT GARY GREENFIELD**

Submitted by:

/s/ James D. Griffin
James D. Griffin     MO# 33370
Michele F. Sutton     MO# 57942
Rachel M. Smith     MO# 71597
SCHARNHORST AST KENNARD GRIFFIN, PC
1100 Walnut, Suite 1950
Kansas City, Missouri 64106
Telephone: (816) 268-9418
Facsimile : (816) 268-9409
Email: jgriffin@sakg.com
      msutton@sakg.com
      rsmith@sakg.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ iii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

    I.      Mr. Greenfield's testimony will aid the jury ............................................................. 2

    II.     Mr. Greenfield is qualified to opine on the reasonableness of legal f
            Fees and expenses ................................................................................................... 4

    III.    Mr. Greenfield's opinions are based on sufficient facts and data ............................ 8

          A.     Mr. Greenfield employed the same methodology as that
                 employed by Defendants' expert ....................................................................... 8

          B.     Mr. Greenfield's analysis is based on sufficient facts and
                 evidence to render his opinions reliable ............................................................ 8

                 1.     Mr. Greenfield's analysis of the amount at risk in
                       the litigation is based on sufficient facts and data ................................ 9

                 2.     Mr. Greenfield's lack of expertise on sleep apnea does not
                       render his opinions regarding the reasonableness of the
                       legal fees incurred by Prime unreliable ............................................... 10

CONCLUSION .............................................................................................................................. 11

# TABLE OF AUTHORITIES

**C**ASES                                                                                **Pages**

*700 Valencia St. LLC v. Farina Focaccia & Cucina Italiana, LLC*,
No. 15-CV-04931-JCS, 2018 WL 783930 (N.D. Cal. Feb. 8, 2018) ........................................................5

*Am. Auto. Ins. Co. v. Omega Flex, Inc.*,
No. 4:11CV00305 AGF, 2014 WL 859760 (E.D. Mo. Mar. 5, 2014) ....................................................5

*American Automobile Insurance Co. v. Omega Flex, Inc.*,
783 F.3d 720 (8th Cir. 2015) ........................................................................................................6, 7

*Calvo Fisher & Jacob LLP v. Lujan*,
234 Cal. App. 4th 608, 184 Cal. Rptr. 3d 225 (2015) ........................................................................5

*Dalidio Fam. Tr. v. San Luis Obispo Downtown Ass'n*,
No. CV 07-6446 CAS (CWX), 2008 WL 11342593 (C.D. Cal. July 14, 2008) ......................................5

*Hanig v. Lee*,
415 F.3d 822 (8th Cir. 2005) ........................................................................................................3

*Holmgren v. Massey-Ferguson, Inc.*,
516 F.2d 856 (8th Cir. 1975) ........................................................................................................6

*In re Barnes*,
266 B.R. 397 (B.A.P. 8th Cir. 2001) ..............................................................................................7

*Koller v. Liberty Mut. Fire Ins. Co.*,
No. 10-00261-CV-W-JTM, 2011 WL 13136316 (W.D. Mo. July 29, 2011) ..........................................3

*Lee v. State Farm Fire & Cas. Co.*,
No. 4:22-CV-00476, 2023 WL 4181114 (E.D. Mo. June 26, 2023) ....................................................6

*Shuck v. CNH Am., LLC*,
498 F.3d 868 (8th Cir. 2007) ........................................................................................................8

*Thomas More L. Ctr. v. Bonta*,
No. 215CV03048CASFFMX, 2022 WL 971946 (C.D. Cal. Mar. 28, 2022) ..........................................5

**R**ULES

Federal Rule of Evidence 702 ........................................................................................................4, 6

**INTRODUCTION**

This is an insurance broker liability case. Prime, a trucking company, alleges that Defendants, insurance brokers, were negligent in procuring a $100,000,000 tower of auto liability with a significant coverage gap and in failing to advise Prime of a material change to the defense obligations in one of the tower policies. (*See* First Amended Petition (Doc. 37) at ¶¶ 91-98). The defects in the tower were exposed by litigation arising from a catastrophic fatal trucking accident in 2015 (the "Underlying Suit"). (*Id.* at ¶¶ 69-85). As a result of Defendants' negligence, Prime incurred damages, including a $2 million payment to cover the gap in the tower procured by Defendants as well as more than $4 million in unreimbursed attorneys' fees. (*Id.* at ¶¶ 92, 98, 102).

Because the damages sought by Prime raises an issue of whether Prime's selection of a national law firm to defend the Underlying Suit after defense counsel withdrew only months before trial was appropriate and whether the attorneys' fees incurred by Prime in the defense were reasonable, Prime retained expert witness Gary Greenfield, founder of Litigation Cost Management ("LCM"), to opine on those issues. (Doc. 107-1 at p. 1). As set forth more fully herein, Mr. Greenfield has more than thirty years of experience consulting with businesses and law firms to more effectively and efficiently manage their outside litigation costs and has conducted hundreds of analyses of legal and expert fees in a wide range of cases.

Defendants have now moved the Court to exclude Mr. Greenfield's report, testimony, and opinions in this matter. (Doc. 107). They argue: (1) Mr. Greenfield's testimony will not assist the jury because the reasonableness of the selection of counsel and the reasonableness of the ensuing legal fees incurred in high stakes litigation are within the common understanding of the jury; (2) Mr. Greenfield is not qualified to opine on the reasonableness of attorneys' fees

incurred by Prime because he does not have sufficient personal injury litigation experience and he has not analyzed legal fees in a trucking accident case; and (3) Mr. Greenfield's opinions are unreliable because he could have conducted further investigation on two of the eight factors he considered in rendering his opinions.

For the reasons set forth herein, the Court should deny Defendants' motion and permit Mr. Greenfield to testify at trial.

ARGUMENT

### I. Mr. Greenfield's testimony will aid the jury.

Mr. Greenfield, an expert on litigation management and legal fees, has been asked to opine on the reasonableness of the legal fees incurred by Prime in the defense of the Underlying Suit, which are claimed as damages in this action as well as the appropriateness of Prime's decision to retain Gibson Dunn to defend the suit. Defendants nonetheless argue that Mr. Greenfield has been asked to opine on a "ultimate issue." (*See* Doc. 107 at pp. 5-6). The ultimate issues in this matter are whether Defendants were negligent in the procurement of a complex, multi-million-dollar tower of excess and umbrella liability policies.[1] Mr. Greenfield's testimony offered, not on the question of negligence, but rather on the measure of an element of Prime's damages and to address Defendants' affirmative defense of failure to mitigate damages. (*See* Doc. 38 at pp. 30-31 ¶¶ 5-6, Doc. 40 at p. 16 ¶ 9).

Because Mr. Greenfield is not opining on the ultimate issue of negligence, Mr. Greenfield's testimony will not invade the province of the jury. Accordingly, Defendants' discussion of *Combs v. Cordish Companies, Inc.*, No. 14–0227–CV–W–ODS2015 WL 3715352, *3 (W.D. Mo. 2015), has no application here.

---

[1] Prime has retained Neal Bordenave, an insurance expert, to opine on the standard of care and breach of that standard by Defendants. (Ex. A, Plaintiff's Expert Disclosures, at p. 1)

Defendants next suggest that Mr. Greenfield's opinions regarding the appropriateness of retaining Gibson Dunn to defend the lawsuit will not be helpful to the jury because "he has no more knowledge and experience than the average juror." (Doc. 107 at p. 6). While the district courts apply their own experience and knowledge of prevailing market rates in determining the reasonableness of attorneys' fees, *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005), generally, jury members do not have the same wealth of knowledge of experience from which to draw. The reasonableness of attorneys' fee – and the ancillary issue of the selection of counsel who generate those fees - are issues generally outside the common understanding of the typical juror.[2] As such, Mr. Greenfield's testimony will assist the jury.

In arguing otherwise, Defendants wholly disregard Mr. Greenfield's three decades of experience in analyzing and opining on the reasonableness of legal fees and advising clients on the efficient and effective management of litigation costs. Mr. Greenfield founded LCM in 1991 after fifteen years as a litigator, ten of which as a partner, (Doc. 107 at p. 1). In addition to analyzing and opining regarding legal fees, LCM consults with clients "regarding how to manage their outside litigation more effectively and efficiently." (Doc. 107-1 at p. 1). As he explained at his deposition, in 1991 he began "consulting with clients, meaning non-law firms and law firms, about how to better manage their litigation in -- in various respects. And among those things was to train companies about how to analyze their legal bills more effectively." (Doc. 107-2 at 8:15-20).

In the course of consulting with clients and acting as an expert witness, Mr. Greenfield has conducted hundreds of analyses of litigation costs in a wide variety of cases and has testified at trial or arbitration more than two dozen times. (Doc. 107-1 at p. 1). He has been a speaker

---

[2] As the Court is no doubt aware, expert witnesses routinely provide opinions and testimony regarding the reasonableness of attorneys' fees. *See e.g., Koller v. Liberty Mut. Fire Ins. Co.*, No. 10-00261-CV-W-JTM, 2011 WL 13136316, at *3 (W.D. Mo. July 29, 2011) (discussing expert testimony on the reasonableness of legal fees in a vexatious refusal case against an insurer);

regarding "analysis of legal fees, legal bill auditing, and litigation management" and was appointed to act as a special master in an insurance company conservation proceeding. (Doc. 107-1 at p. 2).

Contrary to Defendants' characterization, Mr. Greenfield's opinions are not "mere generalities." (*See* Doc. 107 at p. 4). Mr. Greenfield applied his thirty years of experience and knowledge of legal fees and litigation management to the facts and circumstances of this case – facts determined through review of documents and interviews with the participants – to reach his opinions. Such an understanding is outside the common understanding of the jury and Mr. Greenfield's testimony will be helpful to the jury. Indeed, Defendants have retained and disclosed their own expert to opine on these same issues. (*See* Ex. A, Report of Joseph J. Roper ("Roper Report"), at p. 1).[3]

Mr. Greenfield's specialized knowledge and experience will assist the jury.

## II. Mr. Greenfield is qualified to opine on the reasonableness of legal fees and expenses.

As Federal Rule of Evidence 702 explains, a witness may be qualified as an expert based upon his knowledge, skill, experience, training, or education. Fed. R. Evid. 702. Under this standard, Mr. Greenfield is well-qualified to opine on the reasonableness of the legal fees incurred by Prime in defense of the Underlying Suit.

Mr. Greenfield holds a law degree from the University of California – Berkeley School of Law. (Doc. 107-1 at p. 13). He practiced law for fifteen years as a litigator. (Doc. 107-1 at p. 1). Since forming LCM in 1991 he has conducted hundreds of analyses of legal fees and consulted

---

[3] Mr. Roper was retained by Defendants "to provide my analysis, conclusions and opinions relative to the reasonableness of certain fees and expenses incurred by the plaintiff in the lawsuit styled *Tafoya, et al v New Prime, Inc., et al.,* formerly pending in the County of San Miguel, Fourth Judicial District Court, State of New Mexico, Case No. D-412CV-2016-00190 (the "underlying litigation"), and the appropriateness of the decision by plaintiff to retain Gibson, Dunn & Crutcher LLP ("Gibson") in that action."

with numerous clients on efficient litigation management.  (Doc. 107-1 at pp. 1-2).  In addition,

Mr. Greenfield has authored more than a dozen articles on legal fee analysis and legal

management, he has spoken before numerous industry groups on the issue, and he has been

appointed a special master with regard to legal fees and expenses.  (Doc. 107-1 at pp. 13-16).  In

reported cases, Mr. Greenfield has been identified as an expert witness on the reasonableness of

legal expenses in state and federal cases involving such issues as the application of a state anti-

SLAPP statute[4] and claims of legal malpractice,[5]  unlawful detainer,[6] and Constitutional

violations.[7]

Even in the face of Mr. Greenfield's wealth of knowledge and experience, Defendants

argue the Mr. Greenfield is not qualified to opine on the reasonableness of the legal fees in the

Underlying Suit because Mr. Greenfield had limited experience litigating personal injury cases

and he has never before audited or analyzed the legal fees and expenses arising from a trucking

accident case.  (Doc. 107 at pp. 4-5).  Defendants do not explain how a lack of extensive

personal injury litigation experience affects Mr. Greenfield's ability to analyze the fees in this

matter.  Defendants do not identify any characteristics of trucking accidents legal fees that

require specialized skill or experience or demonstrate that trucking accident litigation is some

identified subspecialty of legal fee analysis.

The test to be applied here is not whether Mr. Greenfield has extensive personal litigation

experience or specialized experience in the trucking industry, but rather, whether his training and

experience demonstrate a knowledge of the subject matter.  *See Am. Auto. Ins. Co. v. Omega*

---

[4] *Dalidio Fam. Tr. v. San Luis Obispo Downtown Ass'n*, No. CV 07-6446 CAS (CWX), 2008 WL 11342593, at *3 (C.D. Cal. July 14, 2008).
[5] *Calvo Fisher & Jacob LLP v. Lujan*, 234 Cal. App. 4th 608, 616–17, 184 Cal. Rptr. 3d 225, 231–32 (2015).
[6] *700 Valencia St. LLC v. Farina Focaccia & Cucina Italiana, LLC*, No. 15-CV-04931-JCS, 2018 WL 783930, at *1 (N.D. Cal. Feb. 8, 2018).
[7] *Thomas More L. Ctr. v. Bonta*, No. 215CV03048CASFFMX, 2022 WL 971946, at *3 (C.D. Cal. Mar. 28, 2022).

*Flex, Inc.*, No. 4:11CV00305 AGF, 2014 WL 859760, at \*3 (E.D. Mo. Mar. 5, 2014), *aff'd,* 783 F.3d 720 (8th Cir. 2015) (quoting *Holmgren v. Massey-Ferguson, Inc.*, 516 F.2d 856, 858 (8th Cir. 1975)).  Indeed, "[w]hile Rule 702 requires that 'the area of the witness's competence match the subject matter of the witness's testimony,' the expert does not necessarily need to be a leading authority or specialist within the field in question in order for their testimony to be admissible." *Lee v. State Farm Fire & Cas. Co.*, No. 4:22-CV-00476, 2023 WL 4181114, at \*8 (E.D. Mo. June 26, 2023).

Here, Mr. Greenfield is eminently qualified based on his knowledge, training and experience to opine on the reasonableness of legal costs and expenses. His knowledge, skill, training and experience acquired from analyzing legal costs in hundreds of cases of all kinds was properly brought to bear and equally applicable to the analysis of legal fees in this matter.  Mr. Greenfield is not proposing to offer opinions outside his expertise.

For that reason, Defendants reliance on *American Automobile Insurance Co. v. Omega Flex, Inc.,* 783 F.3d 720 (8th Cir. 2015) is misplaced.  *Omega Flex* involved a suit brought by an insurance company to recover monies it paid its insured after their home was destroyed by fire. *Id.* at 721.  The plaintiff alleged that the defendant's product -- corrugated steel tubing -- used in the home was defectively designed and caused the fire.  *Id.*  The plaintiff's expert witness, a metallurgist, proposed to testify that the defendant's product caused a fire, and that the product was defectively designed.  783 F.3d at 723. The expert was permitted to testify at trial that the defendant's product was prone to arcing, that two holes in the corrugated pipe were caused by lightening-generated arcing, which caused a fire to start when propone escaped from the pipe and ignited. *Id.*  at 724.  As to the design defect and insufficient warnings opinions, the Eighth

Circuit affirmed the district court's exclusion of the expert's opinions as outside his area of expertise. *Id.*

Here, by contrast, Mr. Greenfield does not propose to offer any opinions on any matter outside his field of expertise. Mr. Greenfield's knowledge, training, and expertise in the analysis of legal fees and effective litigation management render him eminently qualified to offer the opinions here.

For this reason, *In re Barnes*, 266 B.R. 397 (B.A.P. 8th Cir. 2001), discussed by Defendants,[8] is inapplicable. In *Barnes,* a plaintiff, in an effort to avoid the discharge of her claim in bankruptcy, sought to show that the auto accident in which she was injured was caused by the defendant's use of alcohol *Id.* at 400. To bridge the gap between the debtor's blood alcohol content ("BAC"), which was measured three hours after the collision, and the statutory BAC for intoxication, Plaintiff offered the testimony of the investigating trooper regarding dissipation rate of alcohol in the blood. *Id.* at 403. The trooper's sole qualification to offer the testimony was his experience working with prosecutors in criminal cases. *Id.* The bankruptcy court held that the trooper did not provide the requisite expert testimony to bridge the evidentiary gap. *Id.* In affirming the bankruptcy court, the Eighth Circuit pointed out that the plaintiff failed to establish the trooper's "skill, training, knowledge, expertise or his education concerning his ability to testify to the rate at which alcohol dissipates in the bloodstream." *Id.* at 404.

Here, by contrast, the record is replete with evidence of Mr. Greenfield's skill, training, knowledge, expertise and education concerning the reasonableness of legal bills. Mr. Greenfield is qualified to offer his opinions in this case.

### III. Mr. Greenfield's opinions are based on sufficient facts and data.

---

[8] Doc. 017 at p. 5.

{00232411.DOCX}

Defendants conclude by challenging the reliability of Mr. Greenfield's opinions, pointing out perceived deficiencies of his investigation of two of the eight factors he considered in his reasonability analysis. The Court should give no credence to Defendants' complaints. Mr. Greenfield's methodology is sound, and his opinions are supported by sufficient facts and evidence.

## A. Mr. Greenfield employed the same methodology as that employed by Defendants' expert.

Defendants' critique of Mr. Greenfield's methodology should be rejected out of hand because their own legal fees expert, Joseph Roper, applied the same methodology. Both experts reviewed the material provided (*see,* Doc. 107-1 at pp. 20-21, Ex. A, Roper Report, at Exhibit 1) and applied their knowledge, skill, training, and expertise[9] to their analysis. (*See* Doc. 107-1 at pp. 5-10; Ex. A, Roper Report, at p. 2, 5-6).

"When a litigant clearly believes a certain methodology is acceptable as shown by his or her own expert's reliance on that methodology, it is disingenuous to challenge an opponent's use of that methodology." *Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007). Thus, to the extent Defendants contend that Mr. Greenfield's methodology is unreliable or somehow lacking, the Court should disregard such arguments.

## B. Mr. Greenfield's analysis is based on sufficient facts and evidence to render his opinions reliable.

Defendants challenge Mr. Greenfield's analysis of two of the eight factors he considered, specifically the amount at risk and the complexity of the legal and factual issues in the underlying litigation. (Doc. 107 at pp. 8-11). Defendants identify perceived deficiencies in Mr.

---

[9] Mr. Roper states that his qualification to offer opinions in this matter is his experience as a trial lawyer and managing principal of litigation. (Ex. A, Roper Report at p. 2). Mr. Roper has not provided expert testimony in any matter in the last four years and did not provide a Rule 25 case list. (*See* Ex. A, Roper Report at p. 2).

Greenfield's analysis of these factors and conclude that these deficiencies render his opinions unreliable in the entirety. Defendants' arguments provide no basis for exclusion of Mr. Greenfield's opinions.

### 1. Mr. Greenfield's analysis of the amount at risk in the litigation is based on sufficient facts and data.

Defendants first take issue with Mr. Greenfield's reference to two large verdicts against trucking companies rendered in 2013 and 2015 of $58.5 million and $165 million, respectively, in judicial districts neighboring the district in which the Underlying Suit was litigated (Doc. 107 at pp. 8-10). They suggest a series of actions Mr. Greenfield should have taken – such as contacting the lawyers in those cases to obtain their hourly rates and fees charges and comparing those rates and results – to argue that, because Mr. Greenfield did not conduct the suggested investigation, his opinion on this factor is unreliable.

As a preliminary matter, Defendants do not demonstrate how the suggested actions were necessary or their absence fatal to Mr. Greenfield's opinions. Second, Defendants discuss only a subset of the facts Mr. Greenfield considered. As Mr. Greenfield explained in his report, he also considered facts specific to the underlying litigation, more specifically:

> Lance Richards, main counsel from Civerolo, indicated in late 2016 that, based on recent verdicts and settlements in trucking cases in the venue, he expected a settlement demand from plaintiffs in the "upper eight figures." In addition, the mock jury results showed a range of $9,601,200 to $80,925,000 for compensatory damages (with a median of $16,500,000 and an average of $35,057,560). The range of the punitive damages for plaintiff was zero to $175,000,000 (with a median of $106,000,000 and an average of $100,775,000). The range of punitive damages for Mr. Scudder, for which plaintiff had potential liability, were $500,000 to $75,000,000 (with a median of $22,500,000 and an average of $20,833,000). See Exhibit 6 hereto. Thus, the mock jury analysis indicated that a verdict in the eight or nine figure range was a very distinct possibility.

(Doc. 107-1 at p. 6), These facts, combined with the reasonable inference from prior trucking verdicts that the forum in which Prime was litigating was dangerous for trucking companies,

amply support Mr. Greenfield's conclusion that the underlying action presented "a very substantial amount of risk" for Prime. The Court should reject Defendants' misleading argument.

> **2. Mr. Greenfield's lack of expertise on sleep apnea does not render his opinions regarding the reasonableness of the legal fees incurred by Prime unreliable.**

In their final point, Defendants contend Mr. Greenfield's opinion that the issues in the Underlying Suit were complex is unreliable because he did not investigate "how many accidents throughout the United States were caused by sleep apnea, how many personal injury lawsuits involve a commercial vehicle having allegations of sleep apnea, how common allegations of sleep apnea are in truck accident lawsuits, or what experience Gibson Dunn had in defending against trucking cases involving sleep apnea allegations before taking the underlying matter." (Doc. 107 at p. 10-11). They conclude, because Mr. Greenfield did not have a thorough understanding of how sleep apnea affects the trucking industry or trucking litigation, he could not reliably opine that the underlying case involved a number of complex issues. (*Id.*).

Defendants' argument suffers from a logical disconnect because it is unclear how a thorough understanding of sleep apnea in commercial trucking is necessary to opine that the issue of sleep apnea contributes to the complexity of the underlying action. Regardless, Defendants again ignore the other evidence Mr. Greenfield considered.

As to this factor, Mr. Greenfield explained:

One of the difficult issues in this case was that Mr. Scudder was diagnosed with sleep apnea and how that condition impacted the accident, if at all, was a major area of contention, which resulted in extensive depositions, document discovery and motion practice.[3]

As additional examples, there were issues regarding how plaintiff dealt with sleep apnea and driver competence issues, both with regard to Mr. Scudder but also in general, as well as the types of damages that plaintiffs were entitled to recover. There were many pretrial issues raised, including summary judgment motions on some of the damage issues. Gibson was successful in obtaining a summary

adjudication that "loss of consortium" damages could not be recovered under the facts of the case. There were over sixty motions filed in the approximately eight months Gibson was counsel.

[3] Further, by the time Civerolo withdrew, it was apparent that Mr. Scudder, the driver of the truck, was not going to be an appealing or sympathetic witness.

(Doc. 107-1 at pp. 6-7).

Contrary to Defendants' argument, Mr. Greenfield did not rely on the issue of sleep apnea alone in reaching his conclusion that the underlying action involved complex factual and legal issues. Even if Mr. Greenfield could have, or should have, undertaken the investigation Defendants suggest, his failure to do so does not render his conclusion on this issue nor his testimony as to the reasonableness of the attorneys' fees in the Underlying Suit unreliable. Mr. Greenfield had ample evidence from which to determine this factor.

### CONCLUSION

Mr. Greenfield's analysis of the factors he considered was supported by sufficient facts and data. His opinions were reached through the application of his knowledge, training, skill and expertise, and his opinions will assist the jury. For the reasons stated herein, the Court should deny Defendants' Motion to Exclude the Report, Testimony, and Opinions of Plaintiff's Expert Gary Greenfield and permit Mr. Greenfield to testify at trial.

Respectfully submitted,

/s/ James D. Griffin
James D. Griffin        MO# 33370
Michele F. Sutton        MO# 57942
Rachel M. Smith        MO# 71597
SCHARNHORST AST KENNARD GRIFFIN, PC
1100 Walnut, Suite 1950
Kansas City, Missouri 64106
Telephone: (816) 268-9418
Facsimile :  (816) 268-9409
Email:  jgriffin@sakg.com
        msutton@sakg.com
        rsmith@sakg.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December 2023 a copy of the above and foregoing was electronically filed using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

    /s/ James D. Griffin
Attorney