IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| NEW PRIME, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 6:22-cv-03037-MDH |
| ) | |
| McGRIFF INSURANCE SERVICES, INC., ) | |
| et al, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court are two summary judgment motions, one from Defendant McGriff ("McGriff") (successor in interest to "Regions") and another from Defendant Amwins ("Amwins") (collectively "Defendants"). Both motions are fully ripe and the Court has considered all briefing. For reasons herein, both pending summary judgment motions are **DENIED**.

## BACKGROUND

This case involves whether Defendants, Plaintiff's insurance brokers, were negligent in how they dealt with some of Plaintiff's insurance coverage, thereby creating a gap in coverage costing Plaintiff millions of dollars. The specific issues at play in the pending Motions for Summary Judgment relate to what duty if any Defendants owed to Plaintiff. Specifically, this Court considers whether: 1) either Defendant had a duty to procure and; 2) either Defendant had an additional duty to advise.

1

Defendants operated as insurance brokers for Plaintiff, a large trucking company with a principal place of business in Springfield, Missouri. Plaintiff's longtime director of risk retired in or around 2013 and, in his place, Plaintiff hired Ms. Michelle Mertz. Plaintiff's director of risk was responsible for, *inter alia*, helping to manage Plaintiff's insurance needs. Because Ms. Mertz had relatively little experience in risk management, Plaintiff's chief financial officer, Mr. Dean Hoedl, asked Mr. Jack Welbourn, a producer with Regions, to serve as a consultant and/or mentor for Ms. Mertz. The parties agree that Mr. Welbourn served as a consultant for Ms. Mertz for a period, but they disagree about the nature and scope of the assistance provided. Amwins operated as a wholesale broker, but Plaintiff alleges that Amwins nonetheless had significant contact with Plaintiff and assumed a significant advising role. Mr. Hoedl offered to pay Mr. Welbourn $50,000 for his consulting services, but Mr. Welbourn declined, conditioned on Mr. Hoedl moving certain policies over to McGriff to manage. (Doc. 114-1 at 6).

The specific insurance policies at issue in this dispute comprise part of a "tower" or "stack" of policies that work to offset Plaintiff's liability arising from truck collisions. An insurance tower or stack is, simply put, a collection of policies with varying limits and coverage that protect against a certain type of risk. Generally, an effective stack involves policies that interrelate seamlessly, creating neither gaps nor double coverage. Plaintiff alleges that the various insurance products Defendants sold Plaintiff proved ineffective, because they created a coverage gap that caused Plaintiff to incur at least $4,900,000 in defense costs and another undisclosed amount in settlements. These amounts stem from Plaintiff's defense of a lawsuit brought against Plaintiff following a December 2015 collision in New Mexico that involved one of Plaintiff's trucks and caused two deaths. Following settlement in December 2017 of the underlying lawsuit, Plaintiff alleges, Plaintiff was then sued by one of Plaintiff's insurers seeking reimbursement for the

coverage gap. The specific gap at issue, according to Plaintiff, relates to the various ways in which the three policies at issue deal with payment of defense costs. This gap was created, Plaintiff alleges, by Defendants' failure to procure the specific policies Plaintiff sought and by Defendants' failure to identify and correct the coverage gap. Plaintiff's First Amended Complaint alleges two counts of negligence and one count of breach of fiduciary duty, seeking damages.

## STANDARD

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

Under Missouri law, brokers most often serve as agents of the insured. *Emerson Elec. Co. v. Marsh & McLennan Companies*, 362 S.W.3d 7, 12 (Mo. 2012). When a broker serves as an insured's agent, the law bestows upon the broker a "duty to the client to act with reasonable care, skill, and diligence" within the scope of the broker's agency. *Id*. Most commonly, the scope of a

3

broker's agency remains limited to procuring sought-after insurance coverage on behalf of the insured. *Id*. The broker's duty is therefore typically limited to acting with reasonable care, skill, and diligence in the process of procuring the specific insurance the insured seeks. *Id*. at 12-13. Should the broker fail to acquire the desired policy, the duty of procurement also requires the broker to inform the insured accordingly. *Id*. at 12-13.

Beyond this basic duty to procure, however, Missouri law recognizes that certain facts and circumstances may exist that give rise to additional duties, "depending on the relationship of the parties and any agreements between them." *Id*. at 20. *See, e.g., Zeff Distrib. Co. v. Aetna Cas. & Sur. Co.*, 389 S.W.2d 789 (Mo. 1965) (recognizing broker's duty to inform insured of policy's expiration when broker handled a substantial part of plaintiff's insurance needs for about nine years); *Allstate Indem. Co. v. Dixon*, No. 6:14-CV-03489-MDH, 2015 WL 6150586, at *1 (W.D. Mo. Oct. 19, 2015) (recognizing duty to, *inter alia*, advise insureds on their needs and availability of certain products when policy language states agent "assist[s] customers with their decision-making process"). Further, under Missouri law, the question of what if any duty a defendant owes a plaintiff in the context of a negligence suit is a matter of law to be determined by the Court. *Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 155 (Mo. 2000) ("Whether a duty exists is purely a question of law."). This Court will address whether Defendants have a duty to procure and/or a duty to advise in turn.

I. **Duty to Procure**

There is no dispute in the present matter that Defendants served as Plaintiff's insurance brokers and agents. (Docs. 113 at ¶ 10; 114 at ¶¶ 20-29). Accordingly, under Missouri law, Defendants owed Plaintiff "a duty of reasonable skill, care, and diligence in obtaining the requested insurance." *Manzella v. Gilbert-Magill Co.*, 965 S.W.2d 221, 225 (Mo. Ct. App. 1998)

4

(internal citations omitted). Parties plainly disagree as to whether Defendants' actions amount to a breach of this duty. (Docs. 113 at 19-20; 114 at 20-21). Plaintiff argues Defendants acted negligently by procuring an insurance tower with a gap and by failing to inform Plaintiff of a change in the defense obligations associated with renewal of one policy within the tower. (Docs. 113 at 19-20; 114 at 20-21). Contrary to McGriff's claim, Plaintiff's First Amended Complaint makes clear that an allegation of failure to procure has been part of Plaintiff's theory of the case since early stages of this litigation. (Doc. 37 at ¶¶ 2, 21, 55, 66). This material disagreement alone is sufficient to deny Defendants' Motions for Summary Judgment.

II. **Duty to Advise**

Plaintiff and Defendants disagree as to whether Defendants owed Plaintiff a general duty to advise. As to the specific meaning of a duty to advise, Plaintiff's First Amended Complaint alleges a duty to explain coverage, explain various options for coverage, explain the specific coverage in fact obtained, and identify and prevent any possible coverage gaps. (Doc. 37 at ¶¶ 19, 25). As described above, Missouri law typically bestows on insurance brokers no such duty to advise, unless case-specific facts give rise to a unique relationship between the broker and the insured. *Emerson* at 20. Defendants argue no such relationship existed, thereby precluding any duty beyond the basic duty to procure. Facts, both agreed-upon and otherwise, however, paint a more complicated picture.

As to Plaintiff's relationship with McGriff, Plaintiff and McGriff agree that Plaintiff asked Mr. Welbourn, a producer with Regions, to assist Ms. Mertz, Plaintiff's new risk manager, in understanding some of Plaintiff's insurance policies. (Doc. 114 at ¶¶ 9, 10). Plaintiff and McGriff, however, disagree as to the scope of Mr. Welbourn's role with Plaintiff and whether Mr. Welbourn served as a consultant on trucking liability and excess policies at issue in this lawsuit. (Doc. 114

5

at ¶ 12). Further complicating the relationship between Plaintiff and McGriff, Mr. Welbourn specifically agreed to removal of language in the broker of record letter that stated, "we are not responsible for product produced by agents prior to our involvement." (Doc. 117 at ¶ 4). During the same exchange, Mr. Welbourn appears to have told Ms. Mertz that "we will make sure there are no issues" in reference to McGriff's responsibility toward Plaintiff's insurance coverage. (Doc. 114-5). Mr. Welbourn also appears to have previously told Ms. Mertz that "when it comes to Prime, I wear 2 hats, one as a consultant and one as an agent." (Doc. 117 at ¶ 8). Further, Mr. Hoedl, Plaintiff's chief financial officer, offered to pay Mr. Welbourn $50,000 to serve as Ms. Mertz's mentor. (Doc. 114 at ¶ 13). In response, Mr. Welbourn testified at deposition that he, "would not charge [Mr. Hoedl] the $50,000 if he moved the umbrella piece to us, because there would be enough revenue in there to for me to also continue answering [Ms. Mertz's] questions." (Doc. 114-1 at 6).

Collectively, this evidence demonstrates, at minimum, McGriff has failed to meet its burden of demonstrating absence of disagreement on facts material to the issue of whether McGriff and Plaintiff had a unique relationship giving rise to a duty to advise. It is arguable this and other evidence included in summary judgment briefing establishes as a matter of law McGriff in fact owed Plaintiff a duty to advise, at least to the extent of ensuring Plaintiff lacked coverage gaps. While Missouri law is clear that existence of such a duty is a question of law for the court to decide, this Court believes it remains premature to reach such a conclusion prior to trial.

The record evidence supporting Plaintiff's claim that Amwins also owed Plaintiff a duty to advise is comparably thin. Plaintiff disagrees with Amwins' assertion that it operated solely as a wholesale broker on behalf of Regions, claiming instead that Amwins was a party to the broker of record letter with Plaintiff and that Amwins "had a great deal of contact directly with Prime."

6

(Doc. 113 at ¶ 13). Plaintiff, however, fails to explain how any additional contact reflects a special relationship that would give rise to an additional duty to advise. Further, Plaintiff's First Amended Complaint acknowledges that Amwins served as the wholesale broker, but nonetheless assumed the role of advisor and regularly engaged and worked with Plaintiff. (Doc. 37 at ¶ 18). Plaintiff also argues that Amwins assumed a duty to advise, ostensibly, when Mr. Timothy Larocca, executive vice president at Amwins, advised Ms. Mertz in an email as to appropriate policy limits and coverage. (Doc. 113-11). Though unclear from Plaintiff's briefing, it is conceivable the communication between Mr. Larocca and Ms. Mertz evidences a type of unique relationship that could give rise to an additional duty beyond the basic duty to procure. On this basis, the Court finds that Amwins has likewise insufficiently demonstrated an absence of disagreement as to material facts that speak to the possible existence of a duty to advise.

## CONCLUSION

For foregoing reasons, both pending Motions for Summary Judgment are **DENEID**. This Court, based only on the evidence submitted in support of the motions for summary judgment, declines to rule at this stage as a matter of law whether Defendants owed Plaintiff a duty beyond the duty to procure a broker customarily owes an insured under Missouri law.

 **IT IS SO ORDERED.**

Dated: February 13, 2024                    /s/ Douglas Harpool
                                            **DOUGLAS HARPOOL**
                                            **United States District Judge**